TJS:HDM
F.# 2014R00365

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**17M 583**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH JENJENLEMAY@GMAIL.COM THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE, INC. | APPLICATION FOR A SEARCH WARRANT FOR INFORMATION IN POSSESSION OF A PROVIDER (EMAIL ACCOUNT)<br><br>Case No. _____ |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Steven Mullen, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account, JENJENLEMAY@GMAIL.COM (the "SUBJECT EMAIL ACCOUNT"), which is stored at premises controlled by Google, Inc., an Google, Inc. headquartered at 1600 Amphitheater Parkway, Mountain View, CA. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google, Inc. to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I have been a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI") for approximately 10 years and am currently assigned to Child Exploitation Investigations Unit. During my tenure with HSI, I have participated in numerous child exploitation investigations, during the course of which I have conducted physical and electronic surveillance, executed search warrants, reviewed and analyzed electronic devices, social media returns and interviewed witnesses.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 1001 have been committed by JENNIE LEMAY. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6. On July 7, 2015, JENNIE LEMAY was arrested on a complaint, sworn in the Eastern District of New York charging her with conspiring, with Alberto Randazzo, to sexually exploit a child. Subsequently, on October 19, 2015, the grand jury returned a superseding indictment, charging her with the same. LEMAY met Randazzo over the Internet and used

various Internet services including Yahoo! Messenger and Skype to commit the crime with which she is charged.

7. On August 24, 2015, United States District Judge Pamela K. Chen ordered LEMAY released pending trial to home detention on a $300,000 bond secured by a $15,000 cash deposit, a property owned by LEMAY and a property owned by her sister. The Court stated that the substantial financial package and the fact that LEMAY was undergoing treatment for pancreatic cancer were key factors in the Court's decision to release LEMAY. The bond included conditions barring LEMAY from having any contact with minors and from using the Internet except to communicate with Pretrial Services, defense counsel, a treatment provider or someone else approved by Pretrial Services.

8. On August 3, 2016 a bond revocation hearing was held as to LEMAY after she violated her pretrial release conditions by attending a Broadway show and visiting Foxwoods Casino in Connecticut without the permission of Pretrial Services. The Court did not remand LEMAY, but stated that any future violation would result in her arrest and revocation of her bond.

9. On May 19, 2017, the victim's social worker contacted Special Agent Mullen to alert Special Agent Mullen that LEMAY had created a new Facebook page under the pseudonym "Molly Mansion", which he had learned from Winter Sargent, who is LEMAY's estranged daughter. On May 20, 2017, Special Agent Mullen contacted Ms. Sargent who explained that on Mother's Day 2017 (Sunday, May 14, 2017), she received a "friend request" from the Molly Mansion Account, and she knew immediately it was LEMAY because "Molly" is the name of LEMAY's dog who died and "Mansion" is what LEMAY calls the large Victorian home in which she lives.

10. Special Agent Mullen then reviewed publicly available pages of the Molly Mansion Account and observed photographs of LEMAY and LEMAY's sisters. Special Agent Mullen also observed that the Facebook page listed 14 "friends," several of whom Special Agent Mullen knows from the investigation to be LEMAY's friends and relatives. These friends included all LEMAY's sisters, including Bessie Sargent and Patti Weatherford —both of whom signed LEMAY's bond; her close friend and former co-worker Bethanny Lauzon and Ms. Lauzon's fifteen-year-old daughter, Edie; and a man named Mark Taylor, with whom LEMAY had a sexual relationship with from at least September 2013 through January 2014.

11. On May 23, 2017, Massachusetts Pretrial Services Officer Michael Forman conducted an unannounced home visit to LEMAY' house. LEMAY admitted maintaining an Internet connection for her tenants, but denied having any Internet-capable devices, and said she does not access the Internet.

12. On June 1, 2017, Special Agent Mullen interviewed Ms. Lauzon in person. Ms. Lauzon confirmed that she has been Ms. Lemay's friend for 20 years. Ms. Lauzon confirmed that the Molly Mansion Account belongs to LEMAY and that she first received a friend request from the Molly Mansion Account in or around December 2016. Ms. Lauzon also explained to Special Agent Mullen that "Molly" is a reference to LEMAY's deceased dog and that "Mansion" is what LEMAY calls her home. Ms. Lauzon added that a picture of a tree on the Molly Mansion Account profile page is picture of a tree in Lemay's backyard. Ms. Lauzon confirmed that Edie Lauzon is her daughter and that she is a minor. Special Agent Mullen asked Ms. Lauzon about another of the friends on the Molly Mansion Account—Nicole Lafebvre. Ms. Lauzon explained that Ms. Lafebvre is a friend of Ms.

Lauzon's who runs a direct-sale home business for LuLaRoe, selling women's clothing, and that LEMAY had purchased clothing from Ms. Lafebvre.

13. On June 5, 2017, Eastern District of New York Pretrial Services Officer Michael Ilaria spoke with LEMAY and she again denied accessing the Internet at all since her release. She also specifically claimed not to have accessed Facebook since her release and said she had "never even heard the name 'Molly Mansion.'"

14. On June 7, 2017, Special Agent Mullen interviewed Ms. Lefebvre by telephone. Ms. Lefebvre has known LEMAY casually for the past 10 years, through her own friendship with Ms. Lauzon. Ms. Lefebvre confirmed she owns a direct-sale business through LuLaRoe. Ms. Lefebvre explained that customers are invited to her Facebook group and she will conduct live events where she posts items of clothing that are available for sale and if someone wants a piece they will write "sold." Ms. Lefebvre confirmed that the Molly Mansion Account was used to make several purchases. Initially she did not know who "Molly Mansion" was but believes that Ms. Lauzon told her the Molly Mansion Account belonged to Jennie Lemay. Ms. Lefebvre provided several email receipts that she sent to LEMAY after LEMAY made purchases through the Molly Mansion Account. The email used by LEMAY is the SUBJECT EMAIL ACCOUNT. These receipts include LEMAY's full name and the address where LEMAY currently resides. Ms. Lefebvre also noted that she provided the items LEMAY purchased to Ms. Lauzon for Ms. Lauzon to deliver to LEMAY.

15. On June 7, 2017, Special Agent Mullen again interviewed Ms. Lauzon, this time by phone. Ms. Lauzon explained that when Ms. Lefebvre started her business a few months ago, Ms. Lefebvre asked her to refer Facebook friends who might be interested in the clothing to Ms. Lefebvre's Facebook group. Ms. Lauzon referred Jennie Lemay, under the

Molly Mansion Account, to Ms. Lefebvre. Ms. Lauzon explained that Ms. Lefebvre provided her with three items of clothing—a dress, a t-shirt and a pair of leggings[1]—to deliver to LEMAY. Ms. Lauzon said she delivered the dress and t-shirt to LEMAY, at LEMAY's home, during the week of May 22, 2017. LEMAY told Ms. Lauzon she could keep the leggings. Ms. Lauzon noted that she had tried to locate the Molly Mansion Account over the past few days but that it appeared to have been taken down.

16. On or about June 26, 2017, LEMAY's estranged daughter, Winter Sargent, forwarded Special Agent Mullen an email she received from "jenjenlemay@gmail.com" on Dec 5, 2016 to a crowd-funding website she maintained. The message said, "Just found this, how much do you need?"

17. On June 8, 2017, Special Agent Mullen verified that the Molly Mansion Account is no longer accessible, indicating that it was deleted or deactivated at some point between May 30, 2017 and June 8, 2017.

18. On June 27, 2017, a preservation request was sent to Google, Inc. In general, an email that is sent to a Google, Inc. subscriber is stored in the subscriber's "mail box" on Google, Inc. servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Google, Inc. servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Google, Inc.'s servers for a certain period of time.

---

[1] The three email receipts provided by Ms. Lefebvre correspond to these three items.

## BACKGROUND CONCERNING EMAIL

19. In my training and experience, I have learned that Google, Inc. provides a variety of on-line services, including electronic mail ("email") access, to the public. Google, Inc. allows subscribers to obtain email accounts at the domain name gmail.com, like the email account listed in Attachment A. Subscribers obtain an account by registering with Google, Inc. During the registration process, Google, Inc. asks subscribers to provide basic personal information. Therefore, the computers of Google, Inc. are likely to contain stored electronic communications (including retrieved and unretrieved email for Google, Inc. subscribers and information concerning subscribers and their use of Google, Inc. services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

20. A Google, Inc. subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Google, Inc. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

21. In my training and experience, Google, Inc. generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such

information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

22. In my training and experience, Google, Inc. typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, Google, Inc. often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

23. In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Google, Inc. typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

24.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling investigators to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the Google, Inc. can show how and when the account was accessed or used. For example, as described below, Google, Inc. typically logs the Internet Protocol (IP) addresses from which users access the email account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## **CONCLUSION**

25. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google, Inc. who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
Steve Mullen
Special Agent
HSI

Subscribed and sworn to before me on _____ 6/27 _____, 2017

S/ Gold.

_____
Honorable Steven M. Gold
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the email account jenjenlemay@gmail.com that is stored at premises controlled by Google, Inc. a company that accepts service of legal process at Google, Inc., C/O Custodian of Records, 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Google, Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on June 27, 2017, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.     The contents of all emails from December 1, 2016 to the present associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.     The types of service utilized;

d.     All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.     All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

II. **Information to be seized by the government**

All information described above in Section I that constitutes evidence and instrumentalities of violations of Title 18, United States Code, Section 1001, subject to the limitation set forth below for email content, those violations involving JENNIE LEMAY and occurring after August 24, 2015, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Records establishing JENNIE LEMAY's use of the Internet to conduct e-commerce transactions and to contact individuals other than her lawyer, her doctors, and her pretrial services officers since being released on home detention;

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation including motive and intent to commit the crime or consciousness of guilt;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

No email content is to be seized by the government other than the content of email communications from December 1, 2016 to the present demonstrating 1) JENNIE LEMAY's use of the Internet to conduct e-commerce transactions, 2) communications between jenjenlemay@gmail.com and Winter Sargant, and 3) communications between jenjenlemay@gmail.com and individuals who were listed as "friends" on the Molly Mansion Facebook Account as of May 20, 2017.